## Voelker, Appellant, v. Edgar.

*Wills—Construction—Life estate—Rule in Shelley's Case not applicable.*

Where a testatrix gives her estate to her executrix in trust for her son "at age of twenty-one years" and if the son "should get married and have children at his death divided between his children" and if the son "has no children living" then over to a sister and nephew of testatrix, and the son reaches the age of twenty-one years and marries and has a child and secures a full release from the remaindermen, he cannot make a fee simple title in real estate of the decedent, inasmuch as he takes a life estate only with a vested remainder in his child and other children that may be born to him thereafter.

Submitted April 25, 1917.   Appeal, No. 99, April T., 1917, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1916, No. 1869, for defendant on case stated in suit of George S. Voelker v. Thomas Edgar.   Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREX-LER and WILLIAMS, JJ.   Affirmed.

Case stated to determine marketable title to real estate.

SWEARINGEN, J., filed the following opinion:

Mary Voelker was in her lifetime seized of an undivided one-fourth of lot No. 48 in Mrs. O. Wharton's plan of Sugar Grove, the plan being of record in the recorder's office of Allegheny County, Pennsylvania, in Plan Book, Vol. 3, page 268. Mrs. Voelker died testate, October 28, 1908, and in her will, duly probated and of record in the register's office of said County of Allegheny, in Will Book, Vol. 97, page 316, she provided, inter alia, as follows:

"2. I direct that all my Real Esteat and Personal property and mixed Whatsoever it may consist of waresoever it may be found to My Son George S. Volker at age of 21 years.

"3. if my Son George S. Volker should get marred and have Childred at his death divided between his Childred and One Thousand Dollars to my Nephew Lauanc Fay and further if my Son has no Children Living the entire Estate to my Sister Phillas Fay at the death of my Sister Phillas Fay the balanc of all my Estates to my nephew Lawanc Fay."

"5. My Sister Phillas Fay to have right and power to Sell all are aney Part of my property as she thinks best and proceed keep in Trust for My Son George S. Volker."

George S. Voelker reached the age of twenty-one years October 2, 1912. He was married on December 12, 1914. Of this marriage there has since been born one child, a daughter named Mary E. Voelker, who is living. Both Phillas Fay and Lawrence Fay are living.

By deed duly executed, acknowledged and delivered, dated November 1, 1912, Phillas Fay and her husband and Lawrence Fay released and quitclaimed unto George S. Voelker, his heirs and assigns, all their right, title and interest in the real estate of Mary Voelker, deceased, reciting specifically her will as above mentioned. By an agreement in writing, dated June 3, 1916, George S. Voelker undertook to convey in fee, clear of all encumbrances, the undivided one-fourth interest in the real es-

tate hereinbefore described unto Thomas Edgar. Copies of all papers to which reference has been made are attached to the case stated and the same are made part thereof. It is agreed that, if the court be of opinion "that the said will of Mary Voelker, deceased, together with the facts herein stated, vested a good, marketable, fee simple title" in George S. Voelker, then judgment shall be entered in his favor for $200; but, if the court be of opinion that he took a "lesser or life estate only ......and not an estate in fee simple," then judgment shall be entered for the defendant, the costs to follow the judgment.

If the second paragraph of this will stood alone, we would have little difficulty in construing it as a devise in fee to George S. Voelker, upon his reaching the age of twenty-one years. While the language used is artless and some words may have been omitted, yet we think the whole is sufficient to pass the entire estate of testatrix, which was a fee simple. But we cannot regard this paragraph as standing alone. Particularly is it connected with the third; and the two must be considered together in order to ascertain the intention of the testatrix. When looked at in this way, we are at once confronted with these considerations:

(a) If George should marry and have children at his death the estate should be divided among such children.

(b) If he should leave no children living at his death, the whole estate should go to Phillas Fay, sister of testatrix.

(c) At the death of the latter, the unexpended balance should go to Lawrence Fay, nephew of testatrix.

Here is a scheme of disposition, which is entirely different from that disclosed in paragraph two. By no proper construction of the two paragraphs taken together can it be held that George S. Voelker was intended to have more than a life estate. If he should leave children at his decease, they were to have the fee. If he should leave no children, whether none were born or

whether such as were born should have died prior to his death, the estate was to go to Phillas Fay.   Clearly these provisions import that George S. Voelker should have but a life estate.   The conditions which reduce the fee, apparently given him in paragraph two, are found in the instrument itself, and thus the requirements of the statute are satisfied.   The Wills Act provides:

"All devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over or by words of limitation or otherwise, in the will, that the testator intended to devise a less estate": Sec. 9, Act of April 8, 1833, P. L. 250.

The argument, however, is made that, conceding George S. Voelker took but a life estate, the language used in the devise over disclosed an intention that the estate should, at the determination of the life estate, go to his issue, and under the rule in Shelley's Case, his estate became a fee tail at common law enlarged into a fee simple under our statute of May 27, 1855.   In order to sustain this contention, the plaintiff is obliged to take the position that the word "Childred," as used in paragraph three, means "issue," that is heirs of the body; and he does take that position.

The words "child" and "children" when used as in this will are primarily words of purchase.   If there be nothing to show that a different meaning was intended, the legal meaning of the terms must prevail, when seeking to ascertain the intention of a testator.   But it is also settled that, if the words are used in the sense of "heirs of the body," they are words of limitation of the estate granted the first taker.   So that our question here is: In what sense did this testatrix use the word "Childred"?   It is clear to us that she used the word in its primary sense.   There is nothing in the will which indicates that she intended otherwise.   No words are used limiting the word "Childred."   The testatrix mentions no one to take at the death of George except "his chil-

dred," if any should survive; she makes no provision for any other descendants. And this view is strengthened by considering the devise over in default of children. It is not to grandchildren, or to issue of George, but to the sister of testatrix. These "childred" of George take directly from the testatrix, and not by inheritance from him. Hence they are purchasers within the rule of law. Consequently, the rule in Shelley's Case is not applicable.

In no case to which we have been referred has the word "children" been construed as meaning "issue," where no qualifying words or other provisions are found in the instrument itself. This occurs in the two cases upon which the plaintiff particularly relies. An examination of the case of Gilland v. Hallett, 240 Pa. 268, shows that the estate was to go over "only in case there should be no children of hers or heirs from any of her children." Thus it is that the words "or heirs from any of her children" showed that the primary meaning of the word "children" was not the one intended. In Pifer v. Locke, 205 Pa. 616, the devise was to a daughter during life and at her death "unto her children or issue in fee simple." Thus the words "or issue" qualified the word "children" and an intention was disclosed in the instrument itself to use the word "children" in a sense different from its primary meaning.

If the foregoing be correct, George S. Voelker is not possessed of a fee simple title at this time. The rights of Mary E. Voelker, his minor daughter, cannot be overlooked. The same is true of any other children that may hereafter be born to him. And the situation is not helped by the fact that the second and third remaindermen had quitclaimed unto him. They could only convey what they themselves had. But their conveyance did not eliminate the rights of the children of George S. Voelker. Consequently, we are driven to the conclusion that George S. Voelker is not now seized of the aforesaid real estate in fee simple; and it follows that he cannot convey such a title.

JUDGMENT.

And now, to wit, September 18, 1916, after argument and upon consideration, judgment is hereby entered in favor of Thomas Edgar, the defendant, with costs.

*Error assigned* was in entering judgment for defendant on case stated.

*R. S. Martin,* for appellant.—It is contended by appellant, that under the second paragraph of the will the son took an estate in fee simple when he became of age, by thus fulfilling the precedent condition of the will: Jackson's Est., 209, 520.

And so having an estate in fee in the first instance, it will not be reduced to an estate for life unless the intention to do so is clear: Ault v. Karch, 220 Pa. 366; Moyer v. Rentschler, 231 Pa. 620.

It is important to keep in mind that the particular estate here is not a life estate with remainder over, but in an absolute fee simple estate in the first instance, and as such, appellant contends it comes within the general rule, that, after an absolute devise in fee, a provision in case of the death of the devisee, without issue or without issue living at the time of his death, or similar phrase, is not a limitation or curtailment of the prior devise, but is alternative or substitutionary and to take effect only on the death of the first devisee in the lifetime of the testator: Neubert v. Colwell, 219 Pa. 248; McAlpin's Est., 211 Pa. 26; Ault v. Karch, 220 Pa. 366; Robinson v. Jones, 222 Pa. 56; Throckmorton v. Thompson, 34 Pa. Superior Ct. 214.

Appellant having survived the testatrix comes within the rule. And the rule is to be followed notwithstanding the Act of 1897, P. L. 213: Daniel's Est., 27 Pa. Superior Ct. 358.

No printed brief for appellee.

557, (1917).]　　　Opinion of the Court.

OPINION BY WILLIAMS, J., May 7, 1917:

The will of Mary Voelker provides, inter alia, as follows: "2. I direct that all my Real Esteat and Personal property and Mixed Whatsoever it may consist of waresoever it may be found to My Son George S. Volker at age of 21 years. 3. if my Son George S. Volker should get married and have Childred at his death divided between his Childred and One Thousand Dollar to my Nephew Lauanc Fay and further if my Son has no Childen Living the entire Estate to my Sister Phillas Fay at the death of my Sister Phillas Fay the balanc of all my Estates to my nephew Lawanc Fay."

George S. Voelker became of age in October, 1912, was married December 7, 1914, and has by that marriage a daughter living, Mary E. Voelker. Lawrence and Phillas Fay have conveyed all their rights to George S. Voelker, who sought to sell the interest in certain real estate devised by the will of Mary Voelker above recited.

The case stated between the parties provided, that if the said will of Mary Voelker vested a fee simple title in her son, George S. Voelker, then judgment for $200 was to be entered for the plaintiff, otherwise for the defendant.

The sole question is: Did the will vest title in fee simple in George S. Voelker? We think not. The will of Mary Voelker provided that if George S. Voelker should marry and have children, the estate, at his death, should be divided among them. He is married and now has one child. She has a vested remainder, as will any other children that may be born to him hereafter. This is the clear intention of the testatrix as shown by her will. The estates of the father and the child born, or children that may be born, are not of the same quality. Therefore, the rule in Shelley's Case does not apply: Bailey's Estate, 64 Pa. Superior Ct. 17.

The judgment is affirmed.